# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01325-COA

IN RE GUARDIANSHIP OF K.G.W., MINOR           APPELLANT
CHILD: RACHAEL GRACE GARLAND

v.

MICKEY (NICKIE) DIANE BUNCH AND JAMES        APPELLEES
CRAIG BUNCH JR.

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/2024 |
| TRIAL JUDGE: | HON. BILLIE J. GRAHAM |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | KIMBERLY-JOY LOCKLEY MIRI |
| ATTORNEYS FOR APPELLEES: | DAWN H. BEAM |
| | RISHER GRANTHAM CAVES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | APPEAL DISMISSED - 01/13/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND LASSITTER ST. PÉ, JJ.**

**LASSITTER ST. PÉ, J., FOR THE COURT:**

¶1.     K.G.W. was born to Rachael Garland and Devin Washington in January 2017 in Alabama. Shortly after her birth, K.G.W. was taken to Wayne County, Mississippi, where she lived primarily with Garland's maternal grandparents, James and Nickie Bunch.

¶2.     In December 2018, the Bunches, Garland, and Washington filed a joint petition in the Wayne County Chancery Court to establish a guardianship of K.G.W. by the Bunches, "as the natural mother and natural father . . . have placed the minor child in [the Bunches'] care." Garland and Washington resided in Alabama. The chancery court found that the Bunches were "fit and suitable persons" to be general guardians for K.G.W. and ordered them to serve

as K.G.W.'s general guardians. No date or condition for terminating the guardianship was specified.

¶3.     Washington filed a petition in September 2019 seeking to set aside the guardianship. Washington's petition alleged that he still lived in Alabama but that Garland now lived with the Bunches and K.G.W. Washington sought physical and legal custody of K.G.W. and visitation for Garland, as well as child support from Garland. The parties litigated that matter at least through April 2021, when Washington's counsel withdrew.

¶4.     In August 2023, Garland's attorney entered an appearance. Garland then filed her own petition for termination of the guardianship, termination of Washington's parental rights, and other relief. Garland alleged that the circumstances originally necessitating the guardianship no longer existed and that the termination of the guardianship would not be harmful to K.G.W.  Garland also sought termination of Washington's parental rights, alleging that he had abandoned or deserted K.G.W. due to substance abuse, his failure to provide for K.G.W., and an erosion of the parent-child relationship.

¶5.     The Bunches responded and counterclaimed against Garland, propounding interrogatories in September 2023. Garland did not respond, and in April 2024, the Bunches moved to dismiss both Washington's and Garland's petitions. The chancellor granted the motion to dismiss Washington's petition but denied the motion to dismiss Garland's, and litigation over her petition to terminate Washington's parental rights and terminate the guardianship continued.

2

¶6. Then, in October 2024, Garland filed a "petition for writ of habeas corpus and motion to dismiss for failure to comply with the GAP Act." Garland alleged, among other things, that the Bunches had "systematically alienated her from her child" and had "self-helped a termination of [Garland's] parental rights" and that K.G.W. was "being wrongfully withheld from her mother." Garland also alleged that the guardianship did not comply with the Mississippi Guardianship and Conservatorship Act ("GAP Act") and that no order had ever been entered removing the guardianship from the purview of the GAP Act.[1]

¶7. Garland filed a notice of hearing on her petition for writ of habeas corpus and motion to dismiss for failure to comply with the GAP Act set for October 30, 2024.[2] At the hearing, Garland appeared to agree that the GAP Act did not apply to the Bunches' guardianship and that "the bottom line" seemed to be that the parents no longer desired the agreed-to guardianship. Garland argued that her parental rights had never been terminated and that she had never been found to be unfit as a mother. She insisted, "[T]here's no reason that [she]" should leave court without, at a minimum, "some stairstep graduated visitation with her

---

[1] *See* Miss. Code Ann. § 93-20-125 (Rev. 2021) (incorporating the GAP Act "to all guardianship and conservatorship proceedings commenced on or after January 1, 2020," and providing that "all guardianship and conservatorship proceedings commenced before January 1, 2020," were also included in the GAP Act "unless the court, in its discretion, determines that the superseded law should apply."). Any "act done before January 1, 2020, is not affected." *Id.*

[2] Garland had multiple motions pending at the time she filed and noticed her petition for writ of habeas corpus and motion to dismiss for failure to comply with the GAP Act, and no explanation was given at the hearing why she did not proceed with the motion to terminate the guardianship filed on August 3, 2023. The actions are still being litigated.

3

baby." Garland argued that "[t]he urgent issue is we have a natural mother being denied access to her child, who . . . should be in her full custody." Garland asked for at least a temporary order of visitation so she could see K.G.W.

¶8.    The Bunches argued that Washington, as the natural father, was entitled to notice of the habeas petition, and the chancellor agreed. The chancery court denied Garland's habeas petition, stating after "a hearing on the merits . . . on the express basis that the Court finds that the minor child's natural father is a necessary party to a/the Habeas Corpus action."

¶9.    Garland appealed. For the reasons set forth below, we find our Court lacks jurisdiction and therefore dismiss this appeal.

**ANALYSIS**

¶10.    Before discussing the merits of the appeal, we first address whether this Court has jurisdiction. Neither party raised the issue, but an appellate court must address issues of jurisdiction on its own motion. *See, e.g.*, *Hamilton v. Southwire Co.*, 191 So. 3d 1275, 1279-80 (¶15) (Miss. Ct. App. 2016); *Gallagher v. City of Waveland*, 182 So. 3d 471, 474 (¶13) (Miss. Ct. App. 2015).

¶11.    Garland's appeal was explicitly filed under Mississippi Code Annotated section 11-43-53 (Rev. 2019), which provides that "[a]ny party aggrieved by the judgment *on the trial of a habeas corpus*[] shall have an appeal to the Supreme Court." (Emphasis added). The facts show that Garland filed and noticed a hearing for her petition for writ of habeas corpus. During that hearing, the court focused on whether the father, Washington, was a necessary

4

party to the habeas petition. After hearing arguments from each side on whether the father was a necessary party, the court ultimately concluded that he was, and without hearing the merits of the petition, the court dismissed specifically on that ground.[3]

¶12.   In an exchange with the attorneys at the hearing, the chancellor stated, "I've got to have testimony. *This case needs to be set for trial* at a time when I can hear from the witnesses, which is— we're not there today."  While we recognize that the court stated in its judgment denying the petition for writ of habeas corpus that the court had "heard oral argument on the record at a hearing on the merits," the record clearly reflects that it did not.

¶13.   This Court accordingly dismisses this appeal for lack of jurisdiction finding that Mississippi Code Annotated section 11-43-53 only authorizes an appeal when a party is aggrieved "by the judgment on the trial of a habeas corpus." Finding there was no trial in the instant case, this Court lacks jurisdiction and, therefore, may not address the issues presented by the Appellant.[4]

---

[3] Although it does not affect the disposition of this case, the chancery court incorrectly concluded that Washington, K.G.W.'s natural father, was a necessary party to the habeas action. In *Bubac v. Boston*, 600 So. 2d 951 (Miss. 1992), the Supreme Court rejected an argument that the father in that case was a necessary party, who could not be joined because he was overseas. *Id.* at 956 n.7 ("[Boston] notes that [Bubac] should be without right to institute any custody-related proceedings so long as the children's father—stationed in Korea—is incapable of being joined as a necessary party. . . . Examination of relevant law reveals no support for [Boston's] contention. [The father] is not a necessary party; he is neither the plaintiff nor defendant.").

[4] We also note that the chancery court's order is not final and appealable under the final judgment rule, as the parties are still litigating Garland's petition to terminate the guardianship. *See Harris v. Waters*, 40 So. 3d 657, 658 (¶3) (Miss. Ct. App. 2010) ("[P]arties may only appeal from a final judgment."); *Ne. Mental Health Mental Retardation*

¶14.    **APPEAL DISMISSED.**

        **BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.**

---

*Comm'n v. Cleveland*, 126 So. 3d 1020, 1023 (¶12) (Miss. Ct. App. 2013) ("A final, appealable judgment is one that adjudicates the merits of the controversy which settles *all issues* as to *all the parties* and requires *no further action by the lower court*.").